IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| The Tool Shed, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:17-1660-HMH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Mattoon Rural King Supply, Inc., | ) | |
| d/b/a Rural King Supply, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, to transfer venue under 28 U.S.C. §§ 1404(a) or 1406(a). For the reasons stated below, the court denies Defendant's motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of a dispute relating to a service mark and trademark registered to the Plaintiff, The Tool Shed, Inc. ("Tool Shed"). (Am. Compl., ECF No. 8.) Tool Shed is a company that has allegedly provided retail store services for professional tools under the service mark "THE TOOL SHED" since 1979 and sold various tools under the trademark "THE TOOL SHED" since 1998. (Id. at ¶ 5, 11, ECF No. 8.) In the amended complaint, Tool Shed asserts that Defendant Mattoon Rural King Supply, Inc. d/b/a Rural King Supply ("Rural King"), a company that operates a chain of more than 100 stores in twelve states, markets products for sale that infringe upon Tool Shed's service mark and trademark on Rural King's website. (Id. at ¶¶ 17-23, ECF No. 8.) Further, Tool Shed alleges that Rural King has purposefully directed

1

activities to South Carolina. (Id. at ¶ 4, ECF No. 8.) Specifically, Tool Shed alleges that these purposefully directed activities include: marketing, advertising, product sales, tortious acts of infringement, unfair competition, and the distribution of goods in South Carolina. (Id., ECF No. 8.) In connection with these activities, Tool Shed alleges that Rural King sold approximately $2,000.00 worth of infringing products to South Carolina addresses through their website. (Id. at ¶ 26, ECF No. 8.) In addition, Tool Shed alleges to have received telephone calls and emails from Rural King's employees and customers regarding warranties and replacement parts for infringing products. (Id. at ¶ 28-61, ECF No. 8.)

On August 15, 2017, Tool Shed filed the amended complaint against Rural King. (Am. Compl., ECF No. 8.) Rural King filed the instant motion on August 29, 2017. (Mot. Dismiss, ECF. No. 11.) Tool Shed responded in opposition on September 14, 2017. (Resp. Opp'n Mot. Dismiss, ECF No. 14.) Rural King filed a reply on September 21, 2017. (Reply Supp. Mot. Dismiss, ECF No. 15.) This matter is ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Personal Jurisdiction

Rural King alleges that the court lacks personal jurisdiction over it. "When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction." ESAB Group, Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999). In the absence of an evidentiary hearing, the plaintiff must establish a prima facie showing of jurisdiction. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). The court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, in ruling on a motion to dismiss for lack of personal jurisdiction.

Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F. Supp. 306, 310 (D.S.C. 1992). The court, moreover, "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs, 2 F.3d at 60.

To assert personal jurisdiction over a non-resident defendant, the exercise of jurisdiction must be authorized by South Carolina's long-arm statute and must comport with the Due Process Clause of the Fourteenth Amendment. Young v. F.D.I.C., 103 F.3d 1180, 1191 (4th Cir. 1997). The Supreme Court of South Carolina has interpreted South Carolina's long-arm statute to extend to the constitutional limits imposed by federal due process. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). "Consequently, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) (internal quotation marks omitted).

Under the constitutional analysis, a court has personal jurisdiction over those persons with "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (internal quotation marks omitted). Personal jurisdiction can be either general or specific, depending upon the degree of defendant's contacts with the forum state. General personal jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," thereby permitting the exercise of jurisdiction for actions unrelated to defendant's contacts with the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). A defendant is subject to

specific personal jurisdiction when the suit arises out of or is related to the defendant's contacts with the forum.  Id. at 414 & n.8.

In determining whether the due process requirements for specific personal jurisdiction exist, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted).  An out-of-state defendant's internet activity may establish specific jurisdiction when the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."  Id. at 714.

Rural King argues that it is not subject to either general or specific jurisdiction in South Carolina because it is not a South Carolina corporation and does not own businesses in South Carolina.  (Def.'s Mem. Supp. Mot. Dismiss 2, ECF No. 11-1.)  In addition, according to Rural King, it does not advertise, expressly solicit sales, engage in marketing, or have employees or agents in South Carolina.  (Id., ECF No. 11-1.)

In support of its motion, Rural King submits the declaration of John Leonauskas ("Leonauskas"), Rural King's Vice President of Marketing.  (Id. Ex. B (Leonauskas Decl. ¶ 1), ECF No. 11-3.)  Leonauskas states that Rural King is an Illinois corporation having its principal place of business in Illinois.  (Id. Ex. B (Leonauskas Decl. ¶¶ 3-4), ECF No. 11-3.)  In addition, Leonauskas states that Rural King maintains approximately one hundred retail stores throughout

the United States. (Id. Ex. B (Leonauskas Decl. ¶ 3), ECF No. 11-3.) However, there are no store locations in South Carolina. (Def.'s Mem Supp. Mot. Dismiss Ex. B (Leonauskas Decl. ¶ 3), ECF No. 11-3.)

In response, Tool Shed asserts that Rural King's online sales of more than $2,000.00 to South Carolina addresses and contacts regarding allegedly infringing products are sufficient to establish specific jurisdiction. (Resp. Opp'n Mot. Dismiss 1-2, ECF No. 14.) Applying the three prongs of ALS Scan, the court finds that Rural King's sale of infringing products to South Carolina addresses through its website is sufficient to establish specific jurisdiction. See Emory Group, LLC v. South By Sea, LLC, CIVIL ACTION NO. 6:15-01856-MGL, 2016 WL 775360, at *3 (D.S.C. Feb. 29, 2016) (unpublished) (finding specific jurisdiction based upon website displaying copyrighted designs and sales in South Carolina). Rural King has directed electronic activity into South Carolina, which resulted in sales of $2,000.00 in South Carolina, and this activity creates a potential cause of action against Rural King in South Carolina. Based on the foregoing, Rural King's motion to dismiss for lack of personal jurisdiction is denied.

### B. Venue

### 1. Motion to Transfer

In the alternative, Rural King moves to transfer this case to the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). Section 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As venue is proper in this case, § 1406(a) is not applicable.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). Whether a case should be transferred under § 1404(a) rests within the sound discretion of the court. In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984). A motion to transfer venue requires the court to engage in an "individualized case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). "District courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).

All of the relevant factors weigh in favor of denying transfer in this case. "As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." Id. (internal quotation marks omitted). "[W]hen a plaintiff files a suit in his home forum, a defendant seeking transfer bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which the transfer is sought." JTH Tax, Inc. v. Callahan, Action No. 2:12cv691, 2013 WL 3035279, at *2 (E.D. Va. June 6, 2013) (unpublished) (citations and internal quotation marks omitted). Tool Shed filed this suit in its home forum, the District of South Carolina. (Am. Compl. ¶ 1, ECF No. 8.)

Rural King alleges that many of the key witnesses reside and work in the Central District of Illinois. (Def.'s Mem. Supp. Mot. Dismiss 23, ECF No. 11-1.). However, Rural King does

6

not present any evidence that these witnesses are unwilling to testify. As a result, the convenience of witnesses does not weigh in favor of transfer. See e.g., United Energy Distribs., Inc. v. Rankin-Patterson Oil Co., C.A. No. 7:07-3234-HMH, 2007 WL 4568997, at *3 (D.S.C. Dec. 20, 2007) (unpublished) (finding the convenience of witnesses does not weigh in favor of transfer where defendant did not allege that non-party witnesses would be unwilling to testify in the forum).

Moreover, employees of Rural King are available to testify in any venue based on the employment relationship. See Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) ("employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship"). Further, any witnesses that are not within the subpoena power of this court could be deposed. See In re Guthrie, 733 F.2d 634, 637-38 (4th Cir. 1984). Ultimately, "[n]o matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away." Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991). Thus, Rural King has failed to demonstrate that the balance of convenience favors transfer.

Lastly, it would be in the interests of justice to deny transfer of this case. There are numerous factors that the court may consider in weighing whether the interests of justice warrant a transfer, including "[t]he ease of access to sources of proof, the availability of compulsory process, the costs and practical problems of litigation, and the state of the respective trial calendars" of the districts being considered. Fairchild Semiconductor Corp. v. Nintendo Co., 810 F. Supp. 173, 175 (D.S.C. 1992). However, none of these factors weigh in favor of transfer. Rural King has failed to present any evidence regarding access to proof, the costs of

litigation, or the respective court's trial calendars.  Further, the court must consider "public-interest factors of systemic integrity and fairness."  Stewart Org., Inc., 487 U.S. at 30.

After consideration of the above factors and thorough review of the record in the case, the court finds that for the convenience of the parties and in the interest of justice, the court denies Rural King's motion to transfer to the Central District of Illinois pursuant to 28 U.S.C. § 1404(a).

It is therefore

**ORDERED** that Rural King's motion to dismiss, or in the alternative, to transfer venue, docket number 11, is denied.

**IT IS SO ORDERED.**

        s/Henry M. Herlong, Jr.
        Senior United States District Judge

Greenville, South Carolina
September 22, 2017