THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| The Tool Shed, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Mattoon Rural King Supply, Inc. d/b/a Rural King Supply <br><br> Defendant. | Civil Action No.:  6:17-cv-01660-AMQ |

**PLAINTIFF'S MOTION TO COMPEL SALES INFORMATION FROM DEFENDANT**

Plaintiff is the owner of an incontestable federal registration for the service mark THE TOOL SHED and has asserted various claims of trademark infringement and violation of the S.C. Unfair Trade Practices Act against Defendant Mattoon Rural King Supply, Inc. (Rural King) based on Rural King's reported sales of more than $20 million of tools under the brand TOOL SHED.  The Lanham Act provides that Plaintiff's incontestable trademark registration constitutes *conclusive* evidence of Plaintiff's "exclusive right to use the registered mark in commerce."  In further support of Plaintiff's exclusive right to use its incontestable mark nationally, Plaintiff has produced advertisements, customer lists, invoices, recognition in nationally published magazines, and over 25 separate instances of actual confusion by Rural King's own employees and customers.  Despite the statutory presumption and Plaintiff's <u>unrebutted</u> evidence of usage in the same locations as many of Rural King's stores, Rural King nonetheless asserts that Plaintiff has not demonstrated <u>any</u> trademark rights outside of South Carolina.  Rural King has therefore objected to producing any information for accused sales outside of South Carolina.  Plaintiff respectfully seeks on order overruling Rural King's objections and compelling Rural King to produce the requested information.

I.      Facts

Plaintiff has sued Rural King for infringement of Plaintiff's federal and common law rights in the trademark THE TOOL SHED.  ECF 8, Am. Compl.  Plaintiff has continuously used the trademark THE TOOL SHED in connection with professional tools for 40 years.  *See* ECF 8-1, U.S. Trademark Registration.  Plaintiff registered its trademark rights in 2003, and those rights are now incontestable.  *Id.*; 15 U.S.C. § 1065.

Rural King's initial disclosures identify that it is in possession of "[d]ocuments demonstrating Plaintiff's lack of sales or presence outside of South Carolina."  Ex. A, Rural King's Rule 26(a)(1) Disclosures, p. 3.  Plaintiff has requested the production of these documents and has not received any responsive documents.  Ex. B, Rural King's Resp. to Pl.'s Req. for Produc., pp. 3-4.

Plaintiff has also requested the production of documents showing sales, profits, and costs associated with accused products bearing the TOOL SHED designation.  *Id.*, pp. 20-22, 33-35.  Although not readily apparent from Rural King's written responses, Rural King objects to producing any information related to sales outside of South Carolina as being irrelevant.  Ex. C, 1/26/18 Letter, p. 3.

The parties participated in a telephone conference with the Court on January 30, 2018.  Although Plaintiff had not yet responded to discovery requests served only three weeks earlier, Rural King nonetheless represented to the Court that Plaintiff's use of the incontestable trademark was limited to Greenville, S.C.  Ex. D, 1/26/18 Email to Court, p. 2.  According to Rural King, "prior to obtaining discovery and seeking to enforce its alleged trademark rights in a specific geographic area, a trademark owner must first establish that it is doing business *and* using the asserted mark in each specific geographic area."  *Id.*  The Court deferred any ruling

until Rural King had an opportunity to consider Plaintiff's discovery responses and evidence of trademark usage outside of South Carolina.

On February 19, 2018, Plaintiff produced written discovery responses. Ex. E, Pl.'s Disc. Resp. As stated throughout these discovery responses, Plaintiff has been nationally advertising and promoting products and services under its incontestable mark since 1978. *Id.* In the first twenty years of operations, this use included a combination of flyers, circulars, brochures, catalogs, and calendars delivered by mail to over 3,000 customers and businesses each year. *Id.*, at 3. In addition, Plaintiff has regularly and continuously appeared in nationally published trade magazines and advertised and promoted its products and services outside of South Carolina using a combination of newspaper, radio, and television advertisements. *Id.* Since the advent of the Internet, Plaintiff has further supplemented its advertising and promotions through its website to thousands of customers and businesses each year. *Id.*

On February 25, 2018, Plaintiff produced responsive documents showing use of its incontestable trademark outside of South Carolina. Although documents prior to 2012 are limited due to Plaintiff's regular document retention practices, Plaintiff produced the following documents showing use of its incontestable trademark <u>outside</u> of South Carolina (with Bates numbers in parentheses):

- television and radio advertisements regularly run in the 1990's (TS 1-9).
- flyers, circulars, brochures, catalogs, and calendars (TS 67-279; TS 294-329);
- mailing and customer lists (TS 1266-1965);
- out of state sales invoices (TS 506-695) Ex. F, Invoices;
- identification in trade magazines distributed nationally by Makita, Milwaukee, and Delta Tools (TS 780-789); and

3

- identification on websites of national tool manufacturers, such as Irwin, Milwaukee, Makita, DeWalt, Freud, SawStop, JET, Klein Tools, and Hitachi (TS 790-798).

Ex. G, Barnard Declaration, para. 3.

Plaintiff also produced the following Google Map which shows the location of each customer since 2012 as identified in Plaintiff's document production:



*Id.*, para. 4; Ex. H, TS 1264.  By comparison, Rural King's website includes the following similarly annotated Google Map showing the location of each of Rural King's stores:



Ex. I, www.ruralking.com/storelocator/index/index.

Plaintiff also produced a copy of the August/September 2017 edition of the nationally distributed trade magazine *Contractor Supply*. Ex. G, Barnard Declaration, para. 5. As shown below, this edition featured Plaintiff's owner, Nils Lindbloom, on the cover and included a 6-page article about Plaintiff as its "Featured Distributor." *Id.*; Ex. J, *Contractor Supply*, Aug./Sep. 2017 (TS 330-337).



Plaintiff also produced contemporaneous records documenting more than 25 separate instances of actual confusion by Rural King's employees and customers. *Id.*, para. 6. These records include contemporaneous notes and recorded phone calls (TS 10-42), phone records (TS 775-779, TS 851-853), and emails received through Plaintiff's website (TS 799-845). *Id.* As shown in the documents, those customers that identified their location were located in Indiana, Pennsylvania, Illinois, Virginia, and Ohio. *Id.*

On March 20, 2018, the parties met and conferred again in an attempt to resolve the present discovery dispute, and Rural King indicated that it would maintain its previous objection to producing any information related to sales outside of South Carolina. On March 27, 2018, Rural King produced documents that did not include any information related to sales outside of South Carolina.

## II.    Analysis

Plaintiff has sued Rural King for infringement of Plaintiff's incontestable federal registration for THE TOOL SHED, and by statute, the measure of damages for infringement of a federally registered trademark may include the infringer's profits. Plaintiff has requested documents showing Rural King's sales, profits, and costs associated with accused products bearing the TOOL SHED brand. Rural King claims that Plaintiff cannot show any trademark usage outside of S.C. and therefore objects to producing any responsive documents showing sales, profits, or costs for accused products sold outside of S.C. as being irrelevant. Rural King's relevance objection to producing these responsive documents lacks any support in either the law or the facts. Therefore, the Court should overrule Rural King's objections and direct Rural King to produce all responsive documents.

### A.   The Requested Documents Are Directly Relevant to Damages for Infringement of a Federally Registered Trademark

Rule 26 of the Federal Rules of Civil Procedure provides, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  Plaintiff has sued Rural King for infringement of Plaintiff's incontestable federal registration of the trademark THE TOOL SHED.  ECF 8, Am. Compl.  The Lanham Act provides that the measure of damages for infringement of a federally registered trademark may include the infringer's profits.  15 U.S.C. § 1117(a).

Plaintiff has requested documents showing Rural King's sales, profits, and costs associated with accused products bearing the TOOL SHED brand.  Ex. B, Rural King's Resp. to Pl.'s Req. for Produc.  Specifically, Plaintiff served the following production requests:

> 27.    Produce any and all documents showing the annual volume of sales (in dollars and units) of Defendant's products sold in the United States under, bearing or related to the designation TOOL SHED for each year (from the date the TOOL SHED designation was first used by Defendant until the present), including sales reports, invoices, QuickBooks data, and all reports of sales and transactions from any wholesaler, dealer, retailer or distributor.
>
> 29.    Produce any and all documents showing the gross and net profits realized by Defendant, directly or indirectly, from the sale of goods and services in the United States under or in connection with the designation TOOL SHED on a yearly basis for the following time period: from the date the TOOL SHED designation was first used by Defendant until the present.
>
> 30.    Produce any and all documents showing the costs or expenses incurred by Defendant in connection with any goods or services marketed or sold or intended to be marketed and sold in the United States under or in connection with the designation TOOL SHED on a yearly basis for the following time period: from the date the TOOL SHED designation was first used by Defendant until the present.

> 48.   Produce all reports showing sales of Defendant's products or services in the United States that include or are sold under or in connection with the designations THE TOOL SHED or TOOL SHED.
>
> 50.   Produce all annual, quarterly, monthly, and weekly sales reports and royalty reports for Defendant's products or services sold in the United States that include or are sold under or in connection with the designation TOOL SHED.

*Id.* at 20-22, 33-34.

The sales, profits, and costs associated with accused products bearing the TOOL SHED brand are directly relevant to proving Plaintiff's claims for damages under the Lanham Act. Therefore, the requested documents are within the scope of discovery permitted by Rule 26(b)(1) and should be produced absent a valid objection.

### B.   Rural King Has Not Produced Any Evidence to Support Its Relevance Objections

It is well-settled that "the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, 2017 U.S. Dist. LEXIS 54182, at *4 (D.S.C. Apr. 10, 2017) (quoting *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013)). In this case, Rural King has summarily objected to Plaintiff's requests for documents showing sales, profits, and costs associated with accused products because "any activity outside of the state of South Carolina (that is not focused on entering South Carolina) is irrelevant to this trademark case." Ex. C, 1/26/18 Letter, p. 3.

As an initial matter, Rural King's relevance objections completely ignore the statutory presumptions that the Lanham Act attaches to Plaintiff's incontestable trademark registration. As the Supreme Court has recently observed,

> Registration on the principal register (1) "serves as 'constructive notice of the registrant's claim of ownership' of the mark,"

8

> (quoting 15 U.S.C. §1072); (2) "is 'prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate,'" (quoting §1057(b)); and (3) can make a mark "'incontestable'" once a mark has been registered for five years," (quoting §§1065, 1115(b)).

*Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017) (internal citations omitted).  "Once a registered mark becomes incontestable, registration serves as conclusive evidence that the registrant owns the mark, has properly registered the mark under the Lanham Act, and has the exclusive right to use the mark in commerce."  *Brittingham v. Jenkins*, 914 F.2d 447, 453 (4th Cir. 1990).

Plaintiff registered its trademark rights in THE TOOL SHED in 2003.  Plaintiff's federal registration constitutes *prima facie* evidence of Plaintiff's "exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate."  15 U.S.C. §§ 1057(b) and 1115(a).  Plaintiff's federal registration is incontestable, creating <u>conclusive</u> evidence of Plaintiff's exclusive rights to the registered trademark.  15 U.S.C. §§ 1065, 1115(b).

Ignoring the statutory presumptions established by the Lanham Act, and without any evidentiary support, Rural King nonetheless takes the position that Plaintiff's requested discovery is irrelevant because Plaintiff "is unable to enforce any rights it may have or recover any damages it believes it has suffered beyond" South Carolina.  Ex. C, 1/26/18 Letter, p. 3.  Specifically, Rural King's initial disclosures state that Rural King has "[d]ocuments demonstrating Plaintiff's lack of sales or presence outside of South Carolina."  Ex. A, Rural King's Rule 26(a)(1) Disclosures, p. 3.  Rural King has also represented to the Court that Plaintiff's use of its incontestable trademark was limited to Greenville, S.C.  Ex. D, 1/26/18 Email to Court.  Both of these statements are demonstrably false.

9

Plaintiff has specifically requested the production of the documents that Rural King identified in its initial disclosures that purportedly demonstrate Plaintiff's lack of sales or presence outside of South Carolina.  Ex. B, Rural King's Resp. to Pl.'s Req. for Produc., pp. 3-4. Although Rural King responded that it would produce responsive documents, Rural King has not produced any documents to support this claim.  *Id.*  In the absence of <u>any</u> evidence to support its relevance objections, the Court should overrule the objections and order the production of the requested documents showing Rural King's sales, profits, and costs associated with accused products bearing the TOOL SHED brand, regardless of the location of the sales.

Plaintiff has not rested on the statutory presumptions provided by the Lanham Act and has instead produced <u>overwhelming</u> evidence of Plaintiff's use of its incontestable trademark outside of South Carolina and in many of the same locations as Rural King's stores. Specifically, Plaintiff has described over 40 years of national advertising, promotions, and sales of products and services under its incontestable trademark.  Ex. E, Pl.'s Disc. Resp.  In the first twenty years of Plaintiff's business, these uses included a combination of flyers, circulars, brochures, catalogs, and calendars delivered by mail to over 3,000 customers and businesses each year.  *Id.* at 3.  In addition, Plaintiff has regularly and continuously appeared in nationally published trade magazines and advertised and promoted its products and services outside of South Carolina using a combination of newspaper, radio, and television advertisements.  *Id.* Since the advent of the Internet, Plaintiff has further supplemented its advertising and promotions through its website to thousands of customers and businesses each year.  *Id.*

Plaintiff has also produced contemporaneous documents, to the extent they still exist, showing use of its incontestable mark outside of South Carolina, including the following (with Bates numbers in parentheses):

10

- television and radio advertisements regularly run in the 1990's (TS 1-9).

- flyers, circulars, brochures, catalogs, and calendars (TS 67-279; TS 294-329);

- mailing and customer lists (TS 1266-1965);

- out of state sales invoices (TS 506-695, Ex. F, Invoices);

- identification in trade magazines distributed nationally by Makita, Milwaukee, and Delta Tools (TS 780-789); and

- identification on websites of national tool manufacturers, such as Irwin, Milwaukee, Makita, DeWalt, Freud, SawStop, JET, Klein Tools, and Hitachi (TS 790-798).

Ex. G, Barnard Declaration, para. 3.

Although Plaintiff's customer lists (TS 1266-1965) are designated Confidential – Attorneys' Eyes Only, Plaintiff has also produced the following Google Map which shows the location of each customer since 2012 as identified in Plaintiff's document production:



*Id.*, para. 4; Ex. H, TS 1264. Although Plaintiff's customer lists (TS 1266-1965) and documented out of state sales invoices (TS 506-695, Ex. F, Invoices) only include customers and

11

sales after 2012, it is reasonable to infer many more customers and sales outside of South Carolina during Plaintiff's previous 30 years of national sales.

By comparison, Rural King's website includes the following similarly annotated Google Map showing the location of each of Rural King's stores:



Ex. I, www.ruralking.com/storelocator/index/index.  The concurrent overlap in Plaintiff's incontestable trademark usage and Rural King's store locations demonstrates that, contrary to Rural King's assertions and objections, Plaintiff has substantial usage and sales outside of South Carolina.

More persuasive evidence of Plaintiff's nationwide use of its incontestable trademark is the August/September 2017 edition of the trade magazine *Contractor Supply*.  Ex. J, *Contractor Supply*, Aug./Sep. 2017 (TS 330-337).  This nationally distributed trade magazine featured Plaintiff's owner, Nils Lindbloom, on the cover and included a 6-page article about Plaintiff as its "Featured Distributor."  *Id.*  As the article discusses, Nils Lindbloom began regularly

attending national conventions and regional meetings conducted by Specialty Tools & Fasteners Distributors Association (STAFDA) in 1987, first as a member and later as a board member of STAFDA.  It is inconceivable that a company with no exposure outside of Greenville, S.C. would garner such national recognition and prominence.

The contemporaneous records that Plaintiff has produced documenting more than 25 separate instances of actual confusion by Rural King's employees and customers provides even more persuasive evidence of Plaintiff's nationwide use of its incontestable trademark.[1]  These records include contemporaneous notes and recorded phone calls (TS 10-42), phone records (TS 775-779, TS 851-853), and emails received through Plaintiff's website (TS 799-845).  As shown in the documents, those customers that identified their location were located in Indiana, Pennsylvania, Illinois, Virginia, and Ohio.  This evidence of actual confusion between Plaintiff's incontestable trademark and Rural King's TOOL SHED branded products – all of which occurred outside of South Carolina – demonstrates that Plaintiff's trademark use is not limited to South Carolina.

Rural King has provided no evidence to support its representation to the Court that Plaintiff's use of its incontestable trademark has been limited to Greenville, S.C., and Plaintiff's evidence of use of its incontestable trademark outside of South Carolina is overwhelming and growing.  For at least this reason, the Court should overrule Rural King's relevance objections and order the production of the requested documents showing Rural King's sales, profits, and costs associated with accused products bearing the TOOL SHED brand, regardless of the location of the sales.

---

[1] Plaintiff anticipates producing more evidence of continuing instances of actual confusion by Rural King's employees and customers, as the number of unique instances of actual confusion has grown to 35 since Plaintiff's document production on February 25, 2018.

      **C.**      **Rural King's Attempt to Avoid Relevant Discovery Requests is Tantamount to Summary Judgment of Non-Infringement for All Accused Sales Outside of S.C.**

Rural King relies exclusively on misrepresented holdings from a line of cases beginning with *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2nd Cir. 1959) to argue that "prior to obtaining discovery and seeking to enforce its alleged trademark rights in a specific geographic area, a trademark owner must first establish that it is doing business and using the asserted mark in each specific geographic area." Ex. D, 1/26/18 Email to Court, p. 2. No court has ever required an owner of a federally registered trademark to establish such evidence <u>before obtaining discovery</u>, and to do so would be contrary to the statutory presumptions provided by Congress in the Lanham Act. *See Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017).

The test for infringement of a registered trademark is whether the accused product bearing a colorable imitation of the registered mark is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). The factors considered in determining likelihood of confusion are: (a) the strength or distinctiveness of the mark; (b) the similarity of the two marks; (c) the similarity of the goods or services the marks identify; (d) the similarity of the facilities the two parties use in their businesses; (e) the similarity of the advertising used by the two parties; (f) the defendant's intent; and (g) actual confusion. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984). "Likelihood of confusion is 'frequently a fairly disputed issue of fact on which reasonable minds may differ,' and has long been recognized to be 'a matter of varying human reactions to situations incapable of exact appraisement.'" *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992) (internal citations omitted). However, "evidence of actual confusion is 'often paramount' in the likelihood of confusion analysis." *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 & 398 (4th Cir. 2009) (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001));

*see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 937 (4th Cir. 1995) (noting that the actual confusion factor is "entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion").

Citing *Dawn Donut*, Rural King attempts to replace this established Fourth Circuit precedent with a simple, but incorrect, proposition that a registered trademark owner must "first establish that it is doing business and using the asserted mark in each specific geographic area" before discovery of sales in that specific geographic area is permitted. Ex. D, 1/26/18 Email to Court, p. 2. However, the Second Circuit in *Dawn Donut* actually held – after the completion of discovery – that plaintiff was not entitled to any relief under the Lanham Act "because no likelihood of public confusion arises from the concurrent use of the mark in connection with retail sales of doughnuts and other baked goods in separate trading areas, and because there is no present likelihood that plaintiff will expand its retail use of the mark into defendant's market area." *Dawn Donut*, 267 F.2d at 360. In the present case, Plaintiff has already produced substantial evidence of likelihood of confusion, such as the similarity of the competing trademarks, the similarity of goods used with the trademarks, and over 25 documented instances of actual confusion. In addition, Plaintiff has been using its incontestable trademark in the same geographic areas as Rural King for over 40 years. Therefore, neither of the bases for the court's holding in *Dawn Donut* exist in the present case.

As the Second Circuit further explicitly noted, and contrary to Rural King's revised test for trademark infringement,

> To sustain a claim for injunctive relief, <u>the plaintiff need not show that the marks are actually being used concurrently in the same trading area</u>. Since the statutory standard for the invocation of injunctive relief is the <u>likelihood of confusion</u>, it is enough that expansion by the registrant into the defendant's market is likely in the normal course of its business." *Id.* at n. 4 (emphasis added).

15

> The decisive question then is whether plaintiff's use of the mark 'Dawn' at the retail level is likely to be confined to its current area of use or whether in the normal course of its business, it is likely to expand the retail use of the mark into defendant's trading area. If such expansion were probable, then the concurrent use of the marks would give rise to the conclusion that there was a likelihood of confusion. *Id.* at 364.

Therefore, *Dawn Donut* did not change the test for trademark infringement, much less the standard for relevant discovery, as Rural King suggests.

Moreover, *Dawn Donut* was decided in 1959, long before the advances in communication brought about by the Internet and other marketing tools, and a growing number of courts have either rejected or easily distinguished the holding in *Dawn Donut* based on facts that did not exist in 1959. *See, e.g.*, *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1057 (6th Cir. 1999) (rejecting *Dawn Donut* and stating that "society is far more mobile than it was four decades ago" and "technological innovations such as the Internet are increasingly deconstructing geographical barriers for marketing purposes" making it "timely to determine whether the Dawn Donut Rule has outlived its usefulness."); *see also Johnson v. Sosebee*, 397 F. Supp. 2d 706, 709 n.1 (D.S.C. 2005)(stating, "Many businesses, especially those accessible over the Internet, may transcend local boundaries. In such cases, this court agrees that a traditional Dawn Donut analysis would be inappropriate.").

Rural King's reliance on *Dawn Donut* is misplaced, outdated, and easily distinguishable based on the substantial evidence Plaintiff has produce of likelihood of confusion, including continued documented instances of actual confusion. No court has ever prevented an owner of a registered trademark from obtaining discovery regarding the damages attributed to the accused infringement, and to do so would effectively grant Rural King summary judgment of non-infringement for all accused sales outside of South Carolina based solely on a relevance

objection that is unsupported by any evidence. Therefore, Plaintiff respectfully asserts that Rural King's relevance objections should be overruled and the requested discovery permitted.

### III.  Conclusion

Based on the foregoing reasoning, evidence, and analysis, the Court should overrule Rural King's relevance objections and order the production of the requested documents showing Rural King's sales, profits, and costs associated with accused products bearing the TOOL SHED brand, regardless of the location of the sales.

Pursuant to Local Rule 7.02, the undersigned affirms that prior to filing the present Motion he conferred with opposing counsel and attempted in good faith to resolve the matter contained in this Motion.

Respectfully submitted,

       s/Steven R. LeBlanc       
Steven R. LeBlanc (Fed Id. 7000)
Steve LeBlanc, LLC
P.O. Box 9198
Greenville, SC 29604
(864) 902-4411
Steve@LeBlancLLC.com

***Attorneys for Plaintiff The Tool Shed, Inc.***

17

## **CERTIFICATE OF SERVICE**

I certify that on April 17, 2018, I electronically filed PLAINTIFF'S MOTION TO COMPEL SALES INFORMATION FROM DEFENDANT to be served on all counsel of record by means of the Court's Notice of Electronic Filing.

Respectfully submitted,

s/Steven R. LeBlanc
Steven R. LeBlanc (Fed Id. 7000)
Steve LeBlanc, LLC
P.O. Box 9198
Greenville, SC 29604
(864) 902-4411
Steve@LeBlancLLC.com

*Attorneys for Plaintiff The Tool Shed, Inc.*